## Case No. 4,902.

### FOLSOM v. MERCANTILE MUT. INS. CO.

[8 Blatchf. 170.] [1]

Circuit Court, S. D. New York. Feb. 1, 1871.[2]

Charles M. Da Costa, for plaintiff.
Townsend Scudder, for defendants.

BLATCHFORD, District Judge. This is an action, tried before the court without a jury, to recover the sum of $3,000, on a policy of marine insurance. The policy was issued to the plaintiff, March 1st, 1869, on the schooner B. F. Folsom, for the sum of $3,000, from January 1st, 1869, to January 1st, 1870. The policy valued the vessel at $35,000. It did not state who the master of the vessel was

[1] [Reported by Hon. Samuel Blatchford. District Judge, and here reprinted by permission.]
[2] [Affirmed in 18 Wall. (85 U. S.) 237.]

or what voyage she was upon. The rate of premium was expressed to be 12 per cent, net. The policy contained this written clause: "Privileged to cancel at the expiration of six months; pro rata premium to be returned for time not used, no loss being claimed." The words "lost or not lost" were not contained in the policy.

The vessel had sailed from Boston for Montevideo and Buenos Ayres, on the 6th of January, 1869, with John Orlando as her master. She was a three masted schooner. She was disabled at sea on the 13th of January, losing two of her masts, and her entire hull, except a part of her bow, going under water. Her crew remained on her for 20 days and nights, the vessel being kept from sinking by the buoyancy of some lumber which formed part of her cargo. Her crew were taken off from her by a Bremen vessel, bound to Bremen, and were landed at Bremerhaven on the 18th of February. The schooner was totally lost through the perils of the sea. On 20th of February, John Orlando, the master of the schooner, wrote and mailed, at Bremerhaven, a letter to the plaintiff, (who was one of the owners of the schooner,) at Philadelphia, announcing the loss of the schooner. This letter reached the plaintiff in due course of mail, after March 9th, bearing, when it reached him, a Bremerhaven postmark of February 20th and a New York postmark of March 9th. The master wrote a second letter, from Bremerhaven, to the plaintiff, at Philadelphia, on the 26th of February, giving fuller particulars of the loss. This letter reached the plaintiff in due course of mail, after March 14th, bearing, when it reached him, a Bremerhaven postmark of February 27th, a New York postmark of March 14th, and a Philadelphia postmark of March 14th. The master had no money with which to prepay for his passage to the United States or for a telegraphic despatch to his owners, and was a stranger in Bremerhaven. His owners had no friends or credit there. Prepayment of a telegraphic despatch to the United States was required. The master obtained a passage from Bremerhaven to the United States, on an American steamer, by giving an order on the plaintiff for the passage money. He noted his protest against the loss of the schooner, before the United States consular agent at Bremerhaven, on the 18th of February, informed that officer of the loss of the vessel and of the arrival of the crew, and applied to him for assistance. He and his crew were furnished with a boarding place by the consular agent. He did not communicate with the plaintiff or with any of the owners of the schooner by telegraph.

On the 22d of February, there was published in the daily public newspapers in the city of New York and in the city of Philadelphia, (the defendants being located in New York and the plaintiff residing in Philadelphia,) a telegraphic despatch in these words:

"Liverpool, Feb. 21. Orlando, from Balt. for Buenos Ayres, lost at sea; crew saved and landed at Bremerhaven." This despatch, as so published in Philadelphia, was seen by the plaintiff before he applied to the defendants to effect the insurance in question. The despatch, as published in New York, was cut out from one of the newspapers by a clerk in the employ of the defendants, at their office in New York, and pasted, on the 22d of February, in a scrap book, with 17 other items of marine disasters which were pasted therein on the same day, such scrap book being regularly kept by such clerk, as a record of disasters. Over the despatch in question, in the book, was written, in large letters, the word "Orlando." The plaintiff made application in person to the defendants to effect the insurance in question, and did not call their attention to the despatch or to its publication. At the time he so made application he knew that John Orlando had sailed in the schooner as her master, and also from what port and on what voyage she had sailed. In the shipping register used by the defendants at the time of issuing the policy, the existence of a bark called the Orlando, a whaler, was noted, but no schooner Orlando was noted. Such bark had in fact been owned, within two or three years before the date of the policy, by a person who was the partner of the plaintiff, but the plaintiff did not, at the time the policy was issued, know in what trade such bark was. Such shipping register contained the name of the schooner B. F. Folsom and her rating and the name of J. Orlando as her master.

The proper proofs of loss were duly furnished, and, if the plaintiff is entitled to recover, his proper claim is $3,000, with interest from May 7th, 1869.

The defendants contend, that, as the vessel was lost when the contract was made, March 1st, and the words "lost or not lost" are not found in the policy, the insurance never took effect, and the plaintiff cannot recover. This view would be sound if the vessel had been lost before January 1st, 1869. But, by the policy, the risk expressly taken is from January 1st, 1869, to January 1st, 1870. It is a risk for the whole of that period. It covers a loss during any part of that time. The premium paid was for the whole time. If the vessel was safe and in being on the 1st of January, 1869, the defendants guaranteed her safety from that time. The inception of the contract in this case was not the 1st of March, 1869, but the 1st of January, 1869. As the vessel was safe on the 1st of January, 1869, she was within the terms of the contract, so that the defendants took the risk upon her. If this were not so, the defendants would be enjoying the premium for the two months from January 1st to March 1st, and yet be running no risk for that time. 1 Phil. Ins. § 925; 1 Arnould, Ins. § 20; Hammond v. Allen [Case No. 6,000]. In the present case, it is not shown that either party knew

of the loss when the policy was issued, and I am of opinion that the policy must be construed as covering any loss which occurred after January 1st, 1869, although before March 1st, 1869.

It is urged, as a defence, that the plaintiff concealed from the defendants material facts known to him. The concealment alleged is, that he did not inform the defendants, before the policy was issued, that the name of the master of the schooner was John Orlando, and that she had sailed for Montevideo and Buenos Ayres, and that he, the plaintiff, had seen in the newspapers the published despatch as to the loss of the Orlando. Conceding that the facts thus alleged to have been concealed were material, yet the defence of concealment is one that must be made out affirmatively by the underwriters. The defendants have not shown that the plaintiff did not, before the policy was issued, communicate to them the fact that the name of the master of the schooner was John Orlando, and that she had sailed for Montevideo and Buenos Ayres. In the absence of such evidence, it must be assumed that the defendants were advised of these facts. As to the despatch about the Orlando and its publication, the defendants knew of it and had a copy of it in their disaster book. In view of this fact, and of the knowledge the defendants had as to who was the master of the schooner and as to what voyage she was upon, it cannot be regarded as a concealment of a fact material to the risk, that the plaintiff did not call the attention of the defendants to the despatch or to its publication. They had already seen it, and the fact that he had seen it cannot be regarded as a material fact. With the despatch, the fact of what voyage the schooner was on, and the name of her master, the defendants had all the information of material facts which the plaintiff had. He was not bound to communicate to the defendants intelligence known to them, or his expectations, opinions or speculations based upon facts known to them. 1 Phil. Ins. §§ 574, 575, 603; 1 Arnould, Ins. §§ 207, 211.

No evidence is given to show that the premium stated in the policy was fixed without reference to any of the three facts so alleged to have been concealed, nor can the court say, in the absence of all evidence, that it is reasonably probable that, with a knowledge of such three facts, the defendants would have declined the risk, or asked a higher premium than that at which the policy was effected. No evidence is given to show whether the rate of premium stated in the policy was a high rate or a low rate,— a rate indicating a great risk, or a rate indicating an ordinary risk. There is nothing to raise the legal presumption that the name of the master and the voyage were not communicated, so as to relieve the defendants from the necessity of giving direct negative evidence to establish that such two facts were not communicated, and to throw on the plaintiff the necessity of giving affirmative evidence that such facts were communicated. Arnould, Ins. § 213.

The plaintiff had no information tending to show any disaster to the schooner, except what was contained in the despatch relative to the Orlando, if that can be regarded as such information. But, it is urged, on the part of the defendants, that the plaintiff must be presumed to have had knowledge, on the 1st of March, of the actual loss of the schooner before that day, because information of the fact could have been communicated to him by telegraph, by the master, from Bremerhaven, before the policy was issued. It is claimed that it was the duty of the master to communicate intelligence of the loss, by telegraph, to the plaintiff, as soon as he arrived at Bremerhaven; and that it is shown that such information by telegraph could have reached the plaintiff at Philadelphia as early as the 22d of February. But this view is contrary to the decision of the supreme court in the case of General Interest Ins. Co. v. Ruggles, 12 Wheat. [25 U. S.] 408. In that case, the vessel was in fact wholly lost and destroyed at the time the insurance was effected, but the fact of the loss was not known to her owner, and such ignorance arose from the designed omission of the master to advise the owner of the loss, in order that the insurance might be effected, and the result of such conduct of the master was, that intelligence of the loss had not reached either the owner or the insurers at the time of the underwriting. But the court held, that, as the loss did not occur through any misconduct of the master's before the happening of the loss, and as, at the time of the misconduct of the master, in suppressing intelligence of the loss, he was not the agent of the owner for any purposes connected with procuring the insurance, and as the agency of the master ceased with the loss of the vessel, so that there was no legal obligation resting on him to communicate information of her loss to her owner, the policy was not vitiated. The decision in that case fully covers the present case.

The absence of any evidence, on the part of the defendants, to show any concealment by the plaintiff of any fact material to the risk, joined with the fact that ordinary prudence on the part of the defendants, in insuring by a time policy running back for two months, would naturally lead them to enquire what voyage the vessel was upon, imposing the necessity of a truthful answer, leads to the conclusion that nothing is shown to impeach the good faith of the plaintiff. Underwriters, in assuming the risk of a loss that may have happened before the date of the policy, assume a hazardous undertaking, and charge a proportionate premium, and must be presumed to inquire as to all obvious matters which may affect the taking of the

risk at all or the rate of premium. Their protection is in their own hands, by rejecting such risks or charging adequate premiums therefor.

I find for the plaintiff, for the sum of $3,-000, with interest from May 7th, 1869.