UNITED STATES v. AMERICAN SURETY CO. OF NEW YORK.

(Circuit Court of Appeals, Fourth Circuit. July 24, 1908.)

No. 810.

1. POST OFFICE—BOND OF RAILWAY POSTAL CLERK—ACTION FOR BREACH.

It is no defense to an action to recover the penalty for breach of a bond given by a postal clerk, conditioned that he would faithfully discharge all duties and trusts imposed on him, where it is shown that he opened and rifled letters coming into his hands, that the United States is not liable to the senders for their loss.

2. SAME.

In such an action, proof that the principal defendant opened letters and packages in the mails and converted the contents to his own use entitles the government to recover, and the failure to prove his appropriation of particular sums or property alleged goes only to the amount of damages recoverable.

In Error to the Circuit Court of the United States for the District of Maryland.

For opinion of the court below, see 161 Fed. 149.

John C. Rose and Morris A. Soper, for the United States.

James U. Dennis (Samuel K. Dennis, on the brief), for defendant in error.

Before PRITCHARD, Circuit Judge, and WADDILL and BOYD, District Judges.

BOYD, District Judge. This suit was brought in the Circuit Court of the United States for the District of Maryland by the United States on the 7th of November, 1906, to recover from the defendant, the American Surety Company of New York, surety upon the bond of one Charles W. Hammel, the sum of $1,000, the penalty of the bond for an alleged breach thereof by the principal. Beginning on the 1st day of December, 1904, and continuing to the 1st day of November, in the year 1905, Charles W. Hammel was a railway postal clerk employed in the post office establishment of the United States. On the 1st day of December, 1904, said Hammel, as principal, and the defendant, the American Surety Company of New York, as surety, duly executed a bond to the United States in the sum of $1,000, conditioned as follows:

"The condition of the said obligation was such that if the said Charles W. Hammel should from and after the 1st day of December, 1904, faithfully discharge all the duties and trusts imposed on him as such railway postal clerk in any railway post office of the plaintiff to which he might be assigned, or in any position of transfer clerk to which he might be detailed, either by law or the rules and regulations of the Post Office Department of the United States, and should faithfully account for and pay over to the proper official all moneys which should come into his hands as such railway postal clerk, then the said obligation should be void; otherwise of force."

After setting forth the facts, substantially, as here given, the plaintiff further alleged:

"And afterwards, to wit, from the 1st day of December, in the year 1904, thence continuously until the 1st day of November, in the year 1905, the said Charles W. Hammel failed and neglected to discharge all the duties and trusts imposed on him as such railway postal clerk by law and the rules and regulations of the Post Office Department of the United States, and during said time did fail and neglect faithfully to account for and pay over to the proper official all moneys which came into his hands as such railway postal clerk, and the plaintiff claims $1,000."

The defendant entered its pleas to the declaration non est factum, performance, and non damnificatus. The plaintiff filed a replication, and the issues were thus raised. The parties, by agreement duly filed, waived a jury and submitted the issues of fact arising upon the pleadings, to the court to apply the propositions of law upon the finding of the fact, as the court might adjudge proper. Thereupon, without the introduction of witnesses to testify orally or by deposition, the following stipulation, signed by counsel, was filed:

"It is hereby stipulated and agreed between the parties hereto, in order to render unnecessary the great expense involved in bringing very many witnesses from a great distance to testify in this case, or the nearly equal expense that would be incurred in taking the testimony of such witnesses at or near their respective places of residence: That the persons whose names are below written in the left-hand column would respectively testify, if examined as witnesses on behalf of the plaintiff in this cause, that they had, severally at the dates below written beside their respective names, mailed as ordinary, unregistered mail matter, letters addressed to the persons whose names are also written beside the respective names of such witnesses, which letters contained in currency or merchandise the sums or values respectively set beside each witness' name, and that no one of the letters so mailed by them respectively, and no part of any of the money or merchandise inclosed in any of the letters, was ever received back by the said sender thereof or by any other for said sender.

"And it further stipulated and agreed that the said persons whose names are below written as the respective addressees of said letters would respectively testify, if examined on behalf of the plaintiff as witnesses in this cause, that neither they nor any other for them ever received any one of said letters or any part of any of the money or merchandise inclosed in any of said letters.

"And it is further stipulated and agreed that a witness produced by and on behalf of the plaintiff, would testify, if examined as a witness in this cause, that letters addressed respectively as each one of the letters in the list hereunder written and mailed at the places and times specified in said list, would, in the regular course of transmission of the means to the places of their respective destination, pass at sometime during said transmission through the hands of Charles W. Hammel, mentioned in the bond sued on in this case, or be handled by another with said Hammel on the railway mail car and be accessible to him, the said Hammel, in the performance of his duties as railway postal clerk, and, although handled by said Hammel, would be accessible to the other railway postal clerks on the same car with the said Hammel, and that the said letters would also in said transmission, both before and after they would pass through the hand of said Hammel or be accessible to him, be handled by and be accessible to other government postal employés in the regular performance of their respective duties.

"And it is further stipulated and agreed that the said Charles W. Hammel, if produced by and on behalf of the plaintiff as a witness, and if examined as a witness in this cause, would testify that during the time said letters referred to in the list hereunder written disappeared from the mails, he, the said Hammel, took from the mails passing through hands or accessible to him in the regular performance of his duties as railway postal clerk letters believed by him to contain money or merchandise in them to his own uses, and that the number of letters so taken by him exceeds the number of letters referred to in the list hereunder written, but that he, the said Hammel, cannot say whether or not any of the letters referred to in the list hereunder written were among those so taken by him, as aforesaid.

"And it is further stipulated and agreed that the United States of America, plaintiff in this case has not paid, and has assumed no obligations to pay, to either the senders or the addressees of said letters in the list hereunder written, the sums of money or the values of merchandise set forth in the list hereunder written, and will not pay such sums or values, or any of them, to any of the said persons, unless it shall recover such sums or values from the said Hammel or the defendant in this case.

"And it is further stipulated and agreed that this stipulation may be read in evidence with the same effect as if each one of the said persons had been produced and sworn on the witness stand as witnesses on behalf of the plaintiff and had testified as above in court; the defendant reserving all its rights of every description to object to the whole or any part of the said testimony as fully as if said testimony had been offered by a witness or witnesses duly sworn and examined in open court, in the usual manner, and this stipulation being made for no other purpose than to save the trouble and expense which would be involved in securing the attendance of or in examining said witnesses in any of the usual ways.

"And it is further stipulated and agreed that this case may be tried by the court without a jury, but reserving to both the plaintiff and defendant all rights of exception, appeal, etc., under section 700 of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 570)."

Attached to this stipulation as to the facts was a list of letters, about 120 in all, giving the names of the senders, the names of the addressees, when and where mailed, and the destination, together with a statement of the value of merchandise claimed to have been inclosed in some of them and amounts of money claimed to have been inclosed in others; the total value of the merchandise being $153.99, and the total amount of the money being $416.49—altogether, $570.48. These several letters, as will be seen in the stipulation, the senders

would have testified were duly mailed at the places named, and the addressees would have testified were never received, and it is also further shown in the stipulation that in the due course of transit they would have passed through the hands of Hammel or through the hands of the other postal clerks associated with him in the conduct of his business. It was not shown definitely that Hammel took any one or more of these particular letters, but by reference to the stipulation filed it will be observed that it contains this statement in regard to the facts to be shown by Hammel himself:

"And it is further stipulated and agreed that the said Charles W. Hammel, if produced by and on behalf of the plaintiff as a witness, and if examined as a witness in this cause, would testify that during the time said letters referred to in the list hereunder written disappeared from the mails, he, the said Hammel, took from the mails passing through his hands or accessible to him in the regular performance of his duties as railway postal clerk letters believed by him to contain money or useful merchandise and opened such letters and converted the money or merchandise in them to his own uses, and that the number of letters so taken by him exceeds the number of letters referred to in the list hereunder written, but that he, the said Hammel, cannot say whether or not any of the letters referred to in the list hereunder written were among those so taken by him, as aforesaid."

The trial judge, upon whom also devolved the duty of ascertaining the facts, treated the testimony of the witnesses as set out in the stipulation as facts found, and thereupon he held as a matter of law that the plaintiff was not entitled to recover. Judgment was rendered accordingly, and the assignment of error which we are to consider is substantially an exception to this ruling. There were two points insisted upon by the defendant below, either of which it was contended would defeat the United States in this action. The one was, substantially, that as the government was under no obligation to refund to the senders of letters nor to the addressees the sum or sums lost by them or the value of articles lost through the mails, and although it may have been shown that money or valuable articles were lost, even if the loss was traced to the unfaithful conduct of Hammel, such loss could not be considered in estimating plaintiff's damages. This contention of the defendant was based upon propositions of law which it was insisted applied in determining the right of a bailee to sue a third person to recover the possession of property bailed, or for damages on account of it, etc. The court readily disposed of this proposition adversely to the defendant, in which decision we heartily concur. The other point was the contention by the defendant that none of the letters specifically set out in the list attached to the stipulation had been traced to the custody of Hammel, and that there was not sufficient evidence to show that any of these letters went into his hands, or that he purloined any of the articles said to have been contained in the letters or any of the several sums of money described as having been sent enclosed in letters. In considering this last proposition the court very properly, as we think, recited the law conferring upon the judge authority to direct a verdict, and the court concluded that, if the case was being actually submitted to a jury, the evidence tending to show that Hammel had purloined any of the particular letters described in the list was not sufficient to authorize the

jury to find as a fact that he did, and it was upon this view of the case that the court entered judgment for the defendant. As this is the point which we deem to be of importance, we repeat what the trial judge said in respect to that question:

"Hammel worked on the railway postal cars operated between New York City and Washington, D. C. One of the items of mail on which this suit is based is proved to have been mailed at New London, Conn., addressed to a person in Waycross, Ga. Other items are proved to have been mailed in Philadelphia, Pa., addressed respectively to persons in Baltimore, and there are in all 120 items included in the claim on which this suit is brought. As to any one of these items, is there any evidence, with all the inferences that a jury could justifiably draw from it, sufficient to support a verdict for the plaintiff that the court would sustain? I am of opinion that there is not. Such a verdict would be clearly wrong in the judgment of the great majority of ordinarily reasonable and fair men.

"Even allowing his testimony full weight in support of the plaintiff's hypothesis that the defendant is liable, Hammel cannot identify any one of the letters as having been taken by him. Each one of those items of mail enumerated in the stipulation was handled by and accessible to many post office employés and subject to possible theft, loss, or destruction by each of them; but because these items in the course of proper transmission through the mails would have passed through the hands of Hammel or been accessible to him, and because he admits that he stole from the mail during the period when these letters disappeared, it is sought to hold the surety on his bond responsible for the loss of the letters. The evidence is too inclusive to support the suit.

"The law does not presume the guilt of a person, but it does not follow that in such a case as this Hammel is to be considered as the only thief then in the employ of the post office department. The letters on which the claim is made might have been stolen, lost, destroyed, or miscarried before or after they were accessible to Hammel, or may have been taken by others on the mail car with him."

We are not inclined to controvert this position, but it is our opinion that it applies exclusively to the question of special damages, and the court, exercising the province of the jury, had the right to determine that there was no sufficient evidence to authorize a finding in favor of such damages. There is, however, we think another view of this case, and that is that one of the conditions of the bond was that Hammel should faithfully discharge all the duties and trusts imposed on him as a railway postal clerk in the service of the Post Office establishment of the United States, and in the declaration it is alleged that during the time that Hammel was in the service as a railway postal clerk, and during the time for which said bond was given, he failed and neglected to discharge all the duties and trusts imposed on him as such railway postal clerk by law and the rules and regulations of the Post Office Department, etc., and although the testimony may not have been sufficient to authorize a finding that he took any one or more of the letters particularly described in the list attached in the stipulation, yet it was shown, taking his testimony to be true, that during the time covered by the bond, whilst serving as a railway postal clerk, he "took from the mails passing through his hands or accessible to him in the regular performance of his duties as railway postal clerk letters believed by him to contain money or other useful merchandise and opened such letters and converted the money or merchandise in them to his own use." If these were facts, in every instance Hammel

committed a breach of the condition of the bond sued on. With information in the possession of the prosecuting officers of the United States of this character concerning the conduct of Hammel, it was their duty to bring a suit upon the bond, and, when such state of facts was shown to exist, we think the law clearly contemplates that a breach shall be declared which would entitle the United States to recover the amount of the bond, to be discharged, however, upon the payment of such special damages as may have been proven to exist. In the absence of proof of special damages, the recovery upon the amount of the bond would necessarily be remitted to a nominal amount in order to carry the costs in favor of the United States.

The judgment of the Circuit Court is therefore reversed, in order that a new trial may be granted and further proceedings taken in accordance with the views we have herein expressed.

Reversed.