### GIBSON et al. v. UNITED STATES.

(Circuit Court of Appeals, First Circuit. November 6, 1913.)

#### No. 1,005.

1. POST OFFICE (§ 7*)—POSTMASTERS—SUIT ON BOND DEFENSES.
    In an action on the bond of a postmaster to recover for money embezzled by him from registered letters, it is no defense that the senders of the letters were negligent in permitting themselves to be induced to send the same.
    [Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 7–14; Dec. Dig. § 7.*]

2. POST OFFICE (§ 7*)—POSTMASTERS—LIABILITY ON BONDS.
    A postmaster is liable on his bond, conditioned as required by Rev. St. § 3834 (U. S. Comp. St. 1901, p. 2610), for the faithful discharge of all the duties and trusts imposed on him by law or the regulations of the department, to the United States as bailee for the value of registered letters embezzled from the mails regardless of the liability of the government to the senders or owners of the letters.
    [Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 7–14; Dec. Dig. § 7.*]

In Error to the District Court of the United States for the District of New Hampshire; Edgar Aldrich, Judge.

Action at law by the United States against James L. Gibson and others. Judgment for plaintiff, and defendants bring error. Affirmed.

Alexander Murchie, of Concord, N. H. (Hollis & Murchie, of Concord, N. H., of counsel), for plaintiffs in error.

C. W. Hoitt, U. S. Atty., of Nashua, N. H.

Before PUTNAM, DODGE, and BINGHAM, Circuit Judges.

DODGE, Circuit Judge. The postmaster's bond upon which the government sues was conditioned as required by Rev. Stats. § 3834 (U. S. Comp. St. 1901, p. 2610). The condition was that the postmaster should "faithfully discharge all the duties and ·trusts imposed on him either by law or by the regulations of the Post Office Depart-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ment." It ran to the United States of America only, as do all such bonds, and was in the penal sum of $6,000.

The breach of condition alleged was the embezzlement by the postmaster of two registered letters, each containing $490 in money, whereby the United States was damnified.

The defendants, who are the sureties on the bond, denied that the plaintiff had been damnified by reason of anything mentioned in the condition.

The jury found, in answer to special questions submitted to them by the court, that the postmaster did convert to his own use two registered letters, specifically described, containing $490 each. Upon these special verdicts judgment was entered in favor of the government for $980 and interest.

1. As plaintiffs in error here, the defendants contend that the evidence did not warrant the findings made, and a verdict for them ought to have been directed. There was uncontradicted evidence for the government that the letters, having been registered and mailed, reached the North Conway post office, whereof the postmaster for whom the defendants were sureties had charge, and were there receipted for, one by the postmaster himself, the other by one of his assistants. North Conway was the post office to which the letters were addressed and from which they were to be delivered to the addressees, residents of North Conway. According to the government's evidence, one letter was received as above on April 27th, the other on May 23, 1910, but neither letter was ever delivered to its addressee. The defendants' evidence tended to show that both were deposited in the post office safe to await delivery, and that not only the postmaster, but also three of his clerks, and certain railway mail clerks who visited the office from time to time, had access to this safe. It also tended to show that there were other residents of North Conway having the same family name as the addressees, and that letters addressed as these were might have been delivered to others than the true owners. The defendants therefore argue that the evidence made it no more probable that the postmaster took these letters after their receipt at the office than that they were taken by others having access to the safe, or were misdelivered. But this contention disregards the further evidence tending to show that on June 6, 1910, a post office inspector discovered the postmaster to be heavily short in his accounts and to have taken money on postal orders made by himself in the names of various other persons; that he was thereupon removed and subsequently sent to a federal prison; that the two registered letters came from banks in neighboring places which had been led to mail the letters and the money they inclosed by letters purporting to come to them from the addressees in North Conway and inclosing notes purporting to be signed by those persons; and that the addressees referred to never wrote or signed these letters or notes or had any knowledge of them. Not only was the postmaster the person accountable for the letters after their receipt at the office by the express provisions of the Postal Regulations, but there was evidence for the jury that he was more likely to have been the person who

took them than any of the other persons shown to have had opportunity to take them.

[1] 2. The defendants also complain that certain evidence offered by them was excluded. As to the first exception of this kind (assignment of errors 2), we think the court was clearly right in refusing to let the defendants ask the post office inspector called by the government, in cross-examination, if he had not known of cases in which persons not entitled to registered letters had receipted for them, taken them, and "made away with the funds." The other exception of this kind (assignment of errors 3) complains of a refusal to admit evidence that the banks from whom the letters and money in question came were negligent in mailing them without verifying the signatures upon the papers they had received, purporting to be signatures of the addressees of the letters. In the view we take of this case, one who has intrusted a properly registered letter to the mail is entitled to the benefit of all laws and regulations intended for the protection and security of the mail, without regard to any of the circumstances which may have induced him to mail his letter. Whether the senders of these letters were negligent or not in relying on the genuineness of previous correspondence can have no bearing upon the extent of liability of the sureties, if the postmaster whose fidelity they guaranteed stole the letters. It was not conduct on the bailor's part which violated the terms of the bailment, as in U. S. v. Atlantic, etc., Co. (D. C.) 206 Fed. 190.

3. Under Rev. Stats. § 3926, as amended in 1897 (Act Feb. 27, 1897, c. 340, § 1, 29 Stat. 599 [U. S. Comp. St. 1901, p. 2685]) and in 1902 (Act April 21, 1902, c. 563), 32 Stats. 117, the Postmaster General had provided rules under which the sender or owner of registered matter like these letters was to be indemnified for losses thereof in the mails, out of the postal revenues, but in no case to exceed $25 for any one piece, or its actual value when of less amount. It appeared that the government had paid one of the banks $50 on account of its loss. Whether or not any payment had been made to the other bank did not appear.

[2] The defendants, besides asking the court to direct a verdict for them on the whole evidence, asked a ruling that their liability, if any, was limited to $50 in this case. The court refused and ruled instead:

"That the government's recovery was not limited to the sum which the government obligates itself to pay the sender of registered mail in case of loss, and that, being in possession of the funds sent through the mails, it is entitled to recover from the sureties to the full amount."

Of this refusal and ruling, and of the ordering of judgment for an amount exceeding $50, the defendants complain as error.

There are some official bonds, similarly conditioned, upon which the federal statutes expressly authorize any person injured by a breach to sue in his own name and for his own use. Such are the bonds required of United States marshals. See Rev. Stats. §§ 783, 784 (U. S. Comp. St. 1901, p. 607). There are no such express provisions applying to postmasters' bonds. This suit is in the name of the United States alone, without suggestion that it is at the relation

of, or for the use or benefit of, any other party. Whether the owners of the letters could have sued either in their own names or in that of the United States, as in Howard v. U. S., 184 U. S. 676, 22 Sup. Ct. 543, 46 L. Ed. 754, need not be considered. This is not such a suit, and the government must show a loss or injury due to an interference with rights of its own.

The government had a special property right in these letters and their contents by virtue of its possession of them for the purpose of delivery to their addressees in accordance with the laws applying to registered mail matter and was strictly bailee thereof under the well-known rules of the common law. The breach of duty which deprived it of the letters and their contents gave it, under ordinary rules, a right of action against the postmaster for their value based on the violation of its special property right. Harrington v. King, 121 Mass. 269, 271. See, also, 2 Kent, Comm. 585; 2 Beven, Negl. (3d Ed.) 736, 737. That the government was not liable to the owners of the property for the postmaster's embezzlement can make no difference here; the bailee's special property and right to recover in such a case exists whatever the degree of responsibility he has assumed by the terms and conditions of the bailment. And for the loss due to this violation at once of the government's rights and of the condition of the bond, the same right of action accrued at the same time, against the postmaster's sureties as against the postmaster himself.

The general rule as between a bailee and one who has wrongfully taken property from him is, unless the general owner has intervened, that the value of the property taken is the measure of the loss or injury to the bailee, and this he may recover for himself to the extent of the separate value, if any, of his special property, and in trust for the owner as to the remainder.

We see no reason why this rule should not apply against the wrong-doer's sureties in such a case as the present. Should the government be allowed so to recover, it would hold the amount recovered upon an implied trust for the owners of the property. To allow such a recovery would not, in our opinion, be holding the sureties to any liability not clearly within the reasonable contemplation and intention of the parties when the bond was given. This was the view taken by the Court of Appeals for the Eighth Circuit in National Surety Co. v. U. S., 129 Fed. 70, 73, 74, 63 C. C. A. 512, also by Judge A. L. Sanborn in U. S. v. American Surety Co. (C. C.) 155 Fed. 941, by Judge Morris in U. S. v. American Surety Co. (C. C.) 161 Fed. 149, 151, and by the Court of Appeals for the Fourth Circuit in U. S. v. American Surety Co., 163 Fed. 228, 231, 89 C. C. A. 658, in affirming Judge Morris' decision. It is true that in the two Court of Appeals decisions cited the bonds were letter carriers' bonds and conditioned, not only for the faithful performance of their duties, but for the payment over of all moneys received, to the proper officials. We see nothing in this, however, which could have made any difference in the application of the general rule. In the case in the Eighth Circuit the amounts lost and recovered from the sureties by the government were within the limit of indemnity out of the postal revenues for the loss of registered mail. But in all

the above cases it was held that the government need not prove any actual payment made by it to the owner of the stolen property in order to recover, and no other ruling could have been made if, as we think, the government's loss consisted in its having been deprived of property for which it was entitled to recover.

If, in order to recover the amount of this loss, it is necessary that the government should appear to be actually liable over to the owners of the letter for any amount so recovered, it is true that the government can be held liable only to the extent that its own laws permit. And while it might be said that, for an amount received by it upon an implied trust for the owner of property in its hands as bailee, it has made itself liable in the Court of Claims, under section 145 of the Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1136 [U. S. Comp. St. Supp. 1911, p. 198]), upon an implied contract, we think it has made itself more expressly liable to an owner of property stolen from the mail in cases where it has recovered such property or its value. The Postmaster General is authorized by Rev. Stats. § 4058 (U. S. Comp. St. 1901, p. 2756), to deliver to the owner money or property so stolen, or the proceeds thereof, when he is satisfied that it has been received at the department, upon satisfactory proof of ownership. The Postal Regulations provide, and provided at the time, in pursuance of this section, for the deposit of all moneys recovered, by suit or otherwise, on account of moneys taken from the mail or losses therein, with a department official—for the determination of the proper person or persons to whom such moneys shall be restored—and for payment in accordance with such determination. Postal Laws and Regulations 1913, § 143, p. 81. These provisions date from 1908.

There can be no question that they will apply to any moneys recovered in this case. As to them, the government will have assumed a liability to the owner to which the provisions for indemnity out of the postal revenues for registered mail matter not recovered for have no application. Rev. Stats. § 4058, appears to have been one of the grounds upon which the Court of Appeals for the Fifth Circuit upheld a similar ruling in favor of the government in American Surety Co. v. U. S., 133 Fed. 1019, 66 C. C. A. 679. The District Court was therefore right in refusing to rule that there could be no recovery, or none in excess of $50, and in entering judgment for the value of the property lost.

The judgment of the District Court is affirmed.