UNITED STATES v. UNITED STATES FIDELITY & GUARANTY CO.

(Circuit Court of Appeals, Sixth Circuit.   January 8, 1918.)

No. 3031.

1. POST OFFICE ⬮9—POSTAL EMPLOYÉS—BONDS.
    Where a post office employé stole three registered packages of unsigned national bank notes, and the United States, pursuant to post office regulations, paid on account of the loss $150, its right of recovery upon a bond given by the postal employé, conditioned for the faithful performance of his official duties, is not limited by the amount the government had to pay its patrons, but extends to the full penalty of the bond, limited only by the amount of the actual injury suffered, not merely by the government itself, but by its patrons, and the government holds the amount recovered, above the amount it has so paid, in trust for the benefit of its injured patrons; the right of recovery resting, not only upon the legal right of an ordinary bailee for hire to recover the full value of the subject of the bailment from one who has wrongfully obtained it, but upon the right of the United States as parens patriæ, and upon principles of public policy, in the performance of its moral duty to protect patrons of the postal service against theft by unfaithful employés.

2. POST OFFICE ⬮12—POSTAL EMPLOYÉS—BONDS—RECOVERY BY UNITED STATES.
    Rev. St. § 4058 (Comp. St. 1916, § 7607), declares that whenever the Postmaster General is satisfied that money or property stolen from the mail, or the proceeds thereof, has been received at the department, he may, upon satisfactory evidence as to the owner, deliver the same to him, while Postal Laws and Regulations, § 143, based upon such section, requires the immediate forwarding to the chief inspector, not only of all moneys received from mail robbers or other offenders against the postal laws, but also moneys received, by suit or otherwise, on account of money taken from the mail or losses therein, and provides that the chief inspector shall determine upon satisfactory evidence the proper persons or owners to whom the moneys shall be restored.   A postal clerk stole three registered packages of bank notes from the mails, and the United States, having paid $150 on account of the theft, sued on the bond of the clerk.   Judgment was rendered in favor of the United States for the full penalty of the bonds, with award of execution for collection of the judgment in full, but with the proviso that the claim of the United States should be discharged by payment by the surety into the registry of the court of the full amount of the judgment, and by withdrawal therefrom by the United States of the sum of $150, with interest, but that the remainder should be held in the court's registry, subject to the further order, and to any lawful claims that may be established thereto by interpleader, by any one claiming an interest in the remainder.   Held that, in view of all the powers conferred on the Postmaster General, the provisions in the judgment for the payment of moneys into court and for interpleaders were improper, and the United States was authorized to recover the full penalty of the bond, as limited by its loss and that of its patrons.

3. INTERPLEADER ⬮17—JURISDICTION TO ENTERTAIN.
    A federal District Court, sitting as a court of law in an action on the bond of a post office employé, has no power to entertain a proceeding for interpleader by persons injured by the employé's theft of registered packages, and who might be entitled to participate in the recovery.

4. INSURANCE ⬮606(1)—GENERAL RULE—SUBROGATION.
    It is a general rule, applicable to insurance and indemnity contracts of all kinds, that the insurer, on paying to the assured the amount of the loss, is subrogated in a corresponding amount to the assured's right of action against any other person responsible for the loss.

⬮For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

5. INSURANCE ☞606(5)—THEFT BY POSTAL EMPLOYÉS—SUBROGATION.

Where a clerk in a post office stole registered packages of bank notes, and the United States paid $50 on account of the theft of each package, an insurer of safe transmission of the notes, having indemnified the sender, the United States had the right to protect the insurer, by way of subrogation, in recognition of the same moral obligation, and the same principles of public policy, as in the case of the patron itself.

6. POST OFFICE ☞12—BONDS OF EMPLOYÉS—RECOVERY.

Where an insurer of the safe transmission of registered packages indemnified the senders, the packages having been stolen by post office employé, and the United States for the benefit of the senders and the insurer sued on the bond of such employé, the questions as to which insurer's liability was primary are for determination by the chief postal inspector, under Rev. St. §§ 4058 (Comp. St. 1916, § 7607), and Postal Laws and Regulations, § 143, providing for forwarding of moneys recovered to the chief inspector, and directing that he shall determine upon satisfactory evidence the proper persons or owners to whom the money shall be restored, and such questions cannot be determined by the federal District Court in an action on the post office employé's bond.

In Error to the District Court of the United States for the Western District of Kentucky; Walter Evans, Judge.

Action by the United States against the United States Fidelity & Guaranty Company. There was a judgment in part for the United States, and the United States brings error. Reversed and remanded, with directions.

Perry B. Miller, U. S. Atty., and S. M. Russell, Asst. U. S. Atty., both of Louisville, Ky.

Keith L. Bullitt, of Louisville, Ky., for defendant in error.

Sidney Chubb, of New York City, and John C. Doolan, Attilla Cox, Jr., and Edmund F. Trabue, all of Louisville, Ky., for interveners.

Before KNAPPEN and DENISON, Circuit Judges, and KILLITS, District Judge.

KNAPPEN, Circuit Judge. A clerk employed in the United States postoffice, at Henderson, Ky., stole from the mails three registered packages, each containing unsigned national bank notes printed by the United States Treasury Department for the Henderson National Bank, of Henderson, Ky., and by the department delivered to the Riggs National Bank, of Washington, D. C., as the agent of the Henderson National Bank, and by the Riggs Bank mailed to its principal. Notes of the face value of more than $4,000 were never recovered, more than $3,000 thereof having been put into circulation by the thief and his accomplices. Pursuant to the post office regulations, the United States paid on account of the loss, $150, viz., $50 for each package stolen. The Marine Insurance Company, Limited, had indemnified the Riggs Bank against loss in connection with the mailing of the packages, and accordingly paid to that bank the entire amount of the loss, presumably less the $150 paid by the government. The United States Fidelity & Guaranty Company had given the United States a bond in the penalty of $1,000, conditioned for the faithful performance by the clerk of his official duties, including the delivery of all matter coming into his hands by virtue of his position in the

postoffice. The United States brought suit in the court below for the recovery of the penalty of the bond. The Fidelity Company admitted its liability for the $150 paid by the United States, but denied further liability. Judgment was rendered in favor of the United States for the full penalty of the bond, with interest and costs, with award of execution for the collection of the judgment in full, but with proviso that the claim of the United States should be discharged by the payment by defendant, into the registry of the court, of the full amount of the judgment, interest and costs, and by the withdrawal therefrom by the United States of the sum of $150, with interest and costs, but that the remainder should be held in the court's registry subject to its further order and to any lawful claims that might be established thereto, by interpleader, on the part of any one claiming an interest in such remainder, especially the National Bank of Henderson, the Riggs National Bank, and the Marine Insurance Company, Limited.

The United States presents error, complaining of so much of the judgment as provides for the retention of the remainder thereof above the $150, interest, and costs, directed to be paid directly to the United States. The Fidelity Company has taken no steps to review the judgment. Since the government sued out this writ of error, the two banks and the Marine Insurance Company, Limited, have filed petition of intervention in the court below, praying that they be adjudged entitled to the fund remaining in court (the banks' claims being presented on behalf of their indemnitor, the Marine Insurance Company, Limited) and for execution against the Fidelity Company.

It was rightly conceded, in argument, that the stolen notes were subject to redemption, and so were property of value, notwithstanding they were put in circulation without the signatures, or upon the forged signatures, of the bank's officers. Act July 28, 1892, c. 317, 27 Stat. 322, U. S. Comp. Stat. 1916, § 9755; Wiggains v. U. S. (C. C. A. 8) 214 Fed. 970, 131 C. C. A. 266.

[1] It is well settled that, while the United States was not, in the first instance, liable on account of the theft, to either the Riggs Bank or the Henderson Bank, as patrons of the post office establishment, for more than the $150 it has actually paid, its right of recovery upon a bond of the character of the one here in suit is not limited to the amount the government has so paid to such patrons, but extends to the full penalty of the bond, limited only by the amount of the actual injury suffered, not merely by the government itself, but by its patrons, and that the government holds the amount recovered, above the amount it has so paid, upon a trust for the benefit of its injured patron. This right of recovery is rested, not only on the legal right of an ordinary bailee for hire to recover the full value of the subject of the bailment from one who has wrongfully converted it, but upon the right of the United States, as parens patriæ, and, upon principles of public policy, in the performance of its moral duty to protect the patrons of its post office establishment against theft by its unfaithful employés. National Surety Co. v. United States (C. C. A. 6) 129 Fed. 70, 74, 63 C. C. A. 512; United States v. American Surety Co. (C. C. A. 4) 163 Fed. 228, 232, 233, 89 C. C. A. 658; Gibson v. United States (C. C. A. 1) 208 Fed. 534, 537, 538, 125 C. C. A. 536; U. S. Fidelity,

etc., Co. v. United States (C. C. A. 8) 229 Fed. 397, 143 C. C. A. 517; 23 Op. Atty. Gen. 476.

[2] The District Judge, however, while recognizing that the bond was given for the benefit of the private patrons of the post office establishment, as well as of the government, and that the latter would hold whatever balance it received above its own immediate money loss as trustee for its patrons, yet expressed himself as knowing of "no definite proceeding by which that trust can be enforced by the beneficiaries," and as being, accordingly, of opinion that the claim of the United States should be discharged by the payment of the actual damage it has sustained, viz., the $150, with interest and costs, and opportunity be given the Henderson Bank and its subrogees to intervene in the instant suit for their protection.

We are unable to agree with this view which we think opposed to well-considered authority. United States v. American Surety Co., 163 Fed. 233, 89 C. C. A. 658, in our opinion, lends no support to the view that the recovery for the full penalty of the bond must be discharged upon the payment of the actual damage sustained by the government. The language there used is "upon the payment of such special damages as may have been proven to exist." This we think refers to the specific losses not definitely proven on the trial of the action upon the bond, in spite of which failure of proof, judgment in form for the penalty of the bond was sustained.

Revised Statutes, § 4058 (U. S. Comp. St. 1916, § 7607), provides that, whenever the Postmaster General is "satisfied that money or property stolen from the mail, or the proceeds thereof, has been received at the department, he may, upon satisfactory evidence as to the owner, deliver the same to him"; and section 143 of the Postal Laws and Regulations 1913, based upon section 4058 of the Revised Statutes, and in force when the proceedings below were had, requires the immediate forwarding to the chief inspector not only of all moneys received from mail robbers or other offenders against the postal laws, but also "moneys recovered by suit, or otherwise, on account of moneys taken from the mail or losses therein," and for the daily deposit of such moneys with the Superintendent Division of Finance, office of the Third Assistant Postmaster General, and that the "chief inspector shall determine, upon satisfactory evidence, the proper persons or owners to whom the moneys shall be restored," and requires the Superintendent Division of Finance above mentioned to make payments in accordance with the schedules furnished and approved by such chief inspector under the authorization of the Postmaster General.

This remedy, in our opinion, clearly applies to the situation before us. Such has been the construction put upon the statute not only by the courts, but contemporaneously by the officers of the government. Gibson v. United States, 208 Fed. at page 538, 125 C. C. A. 536. Such we infer to have been the decision of the Court of Appeals of the Fifth circuit, as indicated by its memorandum opinion in American Surety Co. v. United States, 133 Fed. 1019, 66 C. C. A. 679. See, also, Laws v. Burt, 129 Mass. 202; 10 Decisions of the Comptroller of the Treasury (1904) 872, 876, which involved the disposition of the moneys which were the subject of the recovery in National Surety Co. v.

United States, supra. In Laws. v. Burt, supra, the court refused to entertain a bill in equity, brought against a postmaster by one who had stolen money from the mails, to enforce a trust deed given by plaintiff which conveyed to defendant the proceeds of such money in trust to pay claims arising out of the theft and return the balance to the plaintiff, Mr. Justice Morton saying (129 Mass. 204):

"We are of opinion that the statute applies to this case; and that, when the property named in the plaintiff's deed was transferred to and came to the possession of the defendant Burt, the jurisdiction of the Postmaster General attached. It became the duty of the defendant to pay it over to, or to hold it subject to, the order of the Postmaster General. The defendant * * * has no right to determine who is entitled to the property, nor can this court determine that fact, which is within the exclusive jurisdiction of the Postmaster General."

[3] The court below, as a *court of law*, had *no power* to entertain a proceeding for interpleader. McKemy v. Supreme Lodge A. O. U. W. (C. C. A. 6) 180 Fed. 961, 965, 966, 104 C. C. A. 117. Whether, under the 1915 amendment to the Judicial Code (Act March 3, 1915, c. 90, 38 Stat. 956, U. S. Comp. St. 1916, §§ 1251a and 1251b), the interpleader proceeding contemplated by the judgment could, in the absence of the federal statute in question, be by suitable amendment of pleadings converted into an equity hearing, we need not decide, for we think the statute provides a definite proceeding for the purpose.

The question presented to us is simply whether the statute, which in express terms provides for administrative action through the department, should be superseded by the intervention of the court. On the face of things, there seems no basis for such departure. No satisfactory authority is cited in support of it. In view of the statute, of the government's uniform attitude with reference to its enforcement, and its specific attitude in this case here, it must be conclusively assumed that the department will fully recognize its duty to make proper disbursement. We entirely concur with the view expressed by Attorney General Knox (in 23 Op. Atty. Gen., supra, at page 484) that:

"The government is morally bound to recover from a dishonest official the entire amount of his embezzlement, and, of course, is equally bound in conscience, as the statutes recognize, to return to the owner of the registered letter the entire amount thus recovered from its dishonest employé or from his surety."

The government was thus entitled to collect and disburse the entire amount of the judgment against defendant, unless, as the latter contends, the principles, rules, and decisions which we have cited fail of application, from the fact that the banks have been reimbursed by the Surety Company and so have no direct, personal interest in the recovery.

[4, 5] It is the general rule, applicable to insurance and indemnity contracts of all kinds, that the insurer, on paying to the assured the amount of the loss on the property insured, is subrogated in a corresponding amount to the assured's right of action against any other person responsible for the loss. Travelers' Ins. Co. v. Gt. Lakes Engineering Wks. Co. (C. C. A. 6) 184 Fed. 426, 429, et seq., 107 C. C. A.

20, 36 L. R. A. (N. S.) 60; Turk v. Ill. Cent. R. Co. (C. C. A. 6) 218 Fed. 315, 134 C. C. A. 111; U. S. Fed., etc., Co. v. Union Bk. & Tr. Co. (C. C. A. 6) 228 Fed. 448, 143 C. C. A. 30.

It is urged, however, that the Marine Insurance Company is not legally entitled to recover as subrogee from the United States, for the asserted reason that the doctrine of the moral obligation of the government (which counsel terms a legal fiction) to protect its patrons from loss should not be indulged in when the patron itself has suffered no loss.

We are not impressed by these contentions. Indeed, if they are good, the judgment for the penalty of the bond, which defendant is not seeking to review, would be bad, for in such case there could be no damage beyond what the government has paid under the registered mail regulations. But surely the United States has the right to extend to the surety of its patron a recognition of the same moral obligation and the same principles of public policy which sustain a right of recovery in favor of the patron itself; we know of no equitable principle thereby violated. Indeed, if the now asserted right of subrogation is not of legal quality, but is based on merely moral considerations, the jurisdiction of a court of law or even of a court of equity is scarcely apparent; and this consideration emphasizes the propriety of submitting to the statutory tribunal provided by the government the settlement of the questions of moral obligation and public policy now raised.

[6] Defendant urges, however (and this seems to be its real reason for seeking to sustain the provision for interpleader), that it has the same right to be subrogated to the bank's rights against the Marine Insurance Company as the latter has to be subrogated to the rights of the bank against the Fidelity Company. On the other hand, the Marine Insurance Company, which is represented here by counsel, insists that the liability of the defendant as surety on the postmaster's bond is primary, and that the liability of the Marine Insurance Company to the banks is secondary, or inferior to the liability of the postmaster's surety; and this contention furnishes the substantial issues now in the case. If, however, we are right in the view that the statute provides, under the circumstances presented here, the primarily exclusive forum for the determination of claims to the fund recovered, and that the court below thus had no jurisdiction to make the order of interpleader, it necessarily follows that this court has no jurisdiction to determine questions of priority between the respective indemnitors.

It results from these views that the judgment of the district court was correct so far as it adjudged defendant liable for the amount of the penalty of the bond, with interest and costs, but was erroneous in providing for a release of plaintiff's interest upon receiving the $150 it had paid, plus interest and costs, and in providing for an interpleader in the court below for determining conflicting claims to the remainder.

The judgment of the District Court is accordingly reversed, and the record remanded to that court, with directions to enter an unconditional judgment in favor of the plaintiff, and against defendant, in the sum of $1,000, plus interest and costs.