UNITED STATES ex rel. BRIMBERG BROS., Inc., v. GLOBE INDEMNITY CO.

Circuit Court of Appeals, Second Circuit.
May 7, 1928.

No. 113.

1. United States ⬩67(3)—Bond conditioned on performance of contract for cartage of imported merchandise from wharves to appraisers' stores held for benefit of owners of merchandise (19 USCA § 466).

Under 19 USCA § 466, governing cartage of merchandise when entered at wharves and when sent for examination to appraisers' stores, bond conditioned on performance of undertakings of contract for cartage of imported merchandise from wharves to appraisers' stores held for benefit of owners of merchandise, in that promise therein to be responsible for United States is presumptively for protection of owner, in absence of limitation therein to protection of revenue.

**2. United States ⬤═67(2)—Bond conditioned on performance of contract for cartage of imported merchandise to appraisers' stores covered loss occurring before its execution but within contract period.**

A bond conditioned on performance of undertakings of contract for cartage of imported merchandise from wharves to appraisers' stores during its existence *held* to cover a loss taking place before its execution but within contract period.

In Error to the District Court of the United States for the Southern District of New York.

Action by the United States, on the relation of Brimberg Bros., Inc., against the Globe Indemnity Company and another. From that part of the judgment in favor of defendant named, plaintiff brings error. Reversed, and a new trial ordered.

The action was brought by the relators in the name of the United States upon a bond executed by the defendant under the following circumstances: On May 1, 1923, the collector of customs of the port of New York advertised for bids for the cartage of imported merchandise from the wharves to the appraisers' stores, and awarded a contract for the work to one Keahon, a codefendant herein, on June 29, 1923. The period of the service was to be between July 1, 1923, and June 30, 1924; but, as there was some delay in drawing up the contract, Keahon did not execute it till August 17th, nor the United States until after September 21st. It was dated June 30, 1923, ran for the period mentioned in the advertisement, and by its terms Keahon undertook to be "responsible to the United States for all loss, injury, or damage to merchandise" in his custody, and to furnish a bond in the sum of $50,000. The defendant executed such a bond on August 17, 1923, conditioned upon the performance of all the undertakings "of the said contract during its existence"; it is the bond in suit.

Keahon began to cart merchandise under the terms of the accepted bid on July 1, 1923, and lost some furs belonging to the relators on July 11, 1923, before the contract or bond had been executed. For these the jury rendered a verdict against Keahon, but the judge dismissed the complaint against the defendant, on the ground that the bond did not cover any property lost before the date of its execution. After the action had been brought, the Attorney General authorized the relators to proceed in the name of the United States, and ratified their action up to that time.

Bigham, Englar & Jones, of New York City (Perry A. Hull, of New York City, of counsel), for plaintiff in error.

Sutta & Frankel, of New York City (Nathan Frankel, of New York City, of counsel), for defendant in error.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge. The writ raises two points: May the relators sue upon the bond? If so, does it cover a loss occurring before the date of its execution? The first question depends upon whether the bond was given for the benefit of the United States alone or of the owners of carted merchandise as well. In Howard v. U. S., 184 U. S. 676, 22 S. Ct. 543, 46 L. Ed. 754, the Supreme Court held that a court clerk's bond was available to suitors as well as to the United States, and allowed recovery in an action by an injured party in the name of the United States. In United States v. Abeel, 174 F. 12 (C. C. A. 5), the United States sued in its own name upon such a bond and recovered the losses of private persons, which, however, it was required to deposit in the registry of the court. National Surety Co. v. U. S., 129 F. 70 (C. C. A. 8), U. S. v. American Surety Co., 163 F. 228 (C. C. A. 4), and Gibson v. U. S., 208 F. 534 (C. C. A. 1), involved postmaster's bonds, on which the United States recovered as bailee for the whole loss, regardless of the extent of its liability to the owners of the rifled letters. In U. S. v. Ward, 257 F. 373 (C. C. A. 8), the same was held in respect of the bond of a referee in bankruptcy.

Cases arising under section 270 of title 40 of the Code (40 USCA § 270) are not helpful, for the whole matter is specifically covered. It must be confessed that the state authorities are not in entire accord, and that it is not always easy to learn when such a bond is intended to protect more than the obligee. The rule in New York holds the liability strictly (Fosmire v. National Surety Co., 229 N. Y. 44, 127 N. E. 472), and yet the Appellate Division for the First Department (U. S. ex rel. Matthews v. Massachusetts Bonding & Ins. Co., 207 App. Div. 619, 202 N. Y. S. 867), allowed an owner to recover upon this very bond. While this judgment was reversed for errors in the conduct of the trial, the Court of Appeals (United States ex rel. Matthews v. Massachusetts Bonding & Ins. Co., 238 N. Y. 334, 144 N. E. 631) said at page 338 (144 N. E. 633) that "the bonding company would be liable at least upon the record in this case."

How far this was intended as a deliberate holding, in view of the conclusion of the opinion, may indeed be doubted, but, so far as the courts of that state have expressed themselves, they assimilate this situation with the cases we have mentioned.

In any event the statute here applicable seems to us to lay any doubts which the conflict of authorities may raise. Section 466 of title 19 of the United States Code (19 USCA § 466) governs the carriage of merchandise, both when entered for warehousing and when sent for examination to the appraisers' stores. In the first case a bond is to be taken "for the protection of the government"; in the second, the cartage is to be done by contract and under such regulations "for the protection of the owners thereof and the revenue as the Secretary of the Treasury shall prescribe." In respect of cartage to the appraisers' stores the Secretary has promulgated only article 824, and while this requires a bond it does not prescribe that the bond shall expressly secure the owners as well as the revenue. We think, however, that so much must be implied. We need not say that the Secretary under no circumstances might exclude the owners from the benefit of regulations promulgated by him; but, unless he indicates such an intent, we think that all his regulations are to be read as fulfilling the declared purpose of the statute. In short, unless the bond be limited to a protection of the revenue, it is meant to protect the owners as well. Similarly, although Keahon only promised to be "responsible to the United States," his undertaking was presumptively "for the protection of the owners," and the language must be construed with that interpolation.

The defendant relies upon a later clause in the contract which provides that no member of Congress, or resident commissioner, "or other person whose name is not at this time disclosed, shall be admitted to any share in this contract, or to any benefit to arise therefrom." This language refers to section 115 of the Penal Code (18 USCA § 205), and was meant to cover any interest in the payments to which the carter might become entitled. It would be a perversion of its purpose to extend it to claims against the carter arising from his own torts.

[1] Therefore we conclude that the bond was taken for the benefit of the relators, and that the defendant cannot complain of a recovery so long as it gets a good discharge. Whether an action could be brought by the relators without leave of the Attorney General might perhaps be open to question,

though that course was permitted in Howard v. U. S., in the case of a clerk's bond. However that may be, the only interest of the United States is that the bond shall not be exhausted to the prejudice of any claims which it might have, and the consent of the Attorney General to the prosecution of this action answers any such possibility.

[2] There remains only the question whether the bond covered a loss taking place before it was executed. Normally it would not, but the terms and purpose of the bond in suit take it out of the ordinary rule. It was to cover Keahon's performance of the contract "during its existence," and this by its terms ran from July 1, 1923. We can see no logical difficulty in engaging to make good a loss which has already occurred, if that be the intent. The risk certainly ended on June 30, 1924, and the premium was presumably paid for the whole 12 months. This is the rule in cases of insurance (Folsom v. Mercantile Ins. Co., Fed. Cas. No. 4902, 8 Blatchf. 170), and was held to be applicable by the Circuit Court of Appeals for the Sixth Circuit to the case of a bond to secure faithful performance (Supreme Council v. Fidelity & Casualty Co., 63 F. 48). See, also, Ætna Life Ins. Co. v. American Surety Co. (C. C.) 34 F. 291, 299, 300; Oregon, etc., Co. v. Swinburne, 22 Or. 574, 30 P. 322.

Judgment reversed, and new trial ordered.