## UNITED STATES FOR THE USE AND BENEFIT OF MIDLAND LOAN FINANCE CO. *v.* NATIONAL SURETY CORP. ET AL.

No. 236. Argued January 9, 10, 1940.—Decided February 5, 1940.

---

*Mr. Benedict Deinard* for petitioner.

Mr. *George T. Havel,* with whom *Mr. Henry N. Benson* was on the brief, for Patrick J. Malone; and *Mr. Pierce Butler, Jr.,* with whom *Messrs. M. J. Doherty* and *R. O. Sullivan* were on the brief, for National Surety Corporation, respondents.

By leave of Court, *Solicitor General Jackson, Assistant Attorney General Shea,* and *Messrs. Melvin H. Siegel, Robert K. McConnaughey,* and *Oscar H. Davis* filed a brief on behalf of the United States, as *amicus curiae,* urging affirmance.

MR. JUSTICE REED delivered the opinion of the Court.

The question presented is whether petitioner, a private user of the mails, may without the consent of any officer of the United States bring suit on the bond of an acting postmaster for consequential damages resulting from misdelivery of mail. The Circuit Court of Appeals for the Eighth Circuit affirmed a judgment of the District Court for the District of Minnesota dismissing petitioner's complaint.[1] We granted certiorari[2] because of an alleged conflict with a decision of this Court[3] and because an important question in the administration of the postal laws was involved.

The complaint alleged that petitioner was engaged in the business of automobile financing in Minneapolis, in the course of which it purchased from automobile dealers the installment notes of buyers secured by their sales contracts. A dealer living at Montgomery, Minnesota,

---

[1] 103 F. 2d 450, affirming 23 F. Supp 411.

[2] 308 U. S. 534.

[3] *Howard v. United States,* 184 U. S. 676.

where the respondent Malone was acting postmaster, is alleged to have put into operation a scheme to defraud petitioner by selling it forged notes and contracts, which he sent petitioner along with a fictitious list of credit references. Petitioner, before purchasing, followed its usual practice of mailing letters of inquiry to the references, and after purchasing mailed payment books, insurance certificates, and receipts to the purported makers of the notes. The dealer persuaded the acting postmaster Malone, allegedly in violation of the Postal Regulations,[4] to turn over to him all letters that arrived in Montgomery in petitioner's envelopes. Then he sent forged replies to petitioner's letters and made installment payments out of the money which petitioner had paid him in buying the notes. The dealer thus defrauded the Finance Company of some $34,000. The respondent Malone, on taking office as acting postmaster, had executed a bond for $16,000 to the United States as sole obligee with the respondent Surety Corporation as surety. The condition of the bond was:

"That if the said Patrick J. Malone shall on and after the date he took charge of the post office faithfully discharge all duties and trusts imposed on him as acting postmaster either by law or by the regulations of the Post Office Department, and shall perform all duties as fiscal agent of the Government imposed on him by law or by regulation of the Treasury Department made in conformity with law, and shall also perform all duties and obligations imposed upon or required of him by law, or by regulation made pursuant to law, in connection with

---

[4] Postal Laws and Regulations (1932), § 777. "Mail matter should be delivered to the person addressed or in accordance with his written order . . ."

"2. When a person requests delivery to him of the mail of another, claiming that the addressee has verbally given him authority to receive it, the postmaster, if he doubts the authority, may require it to be in writing, signed and filed in his office. . . ."

the Postal Savings System, then this obligation shall be void; otherwise, of force." .

In its complaint, without alleging specific authorization from the United States to sue, petitioner asked judgment on the bond for the defaults of Malone as postmaster. At the close of the testimony at the trial motions to dismiss the complaint were made by respondents and the district judge reserved judgment. After a jury verdict for petitioner the motions were granted. The Court of Appeals affirmed on the ground that a private user of the mails cannot maintain such an action as is here alleged without the consent of the United States, the obligee in the bond, and that no consent was given either by the statutes, expressly or by implication, or by any appropriate officer of the United States.

The respondent gave a statutory bond in compliance with an enactment of the Congress for the purposes specified in the statute.[5] As the bond is part of an integrated system of postal regulations, the determination of the parties authorized to sue upon it is a federal question governed by federal law.[6]

We agree with the Court of Appeals that there was no consent and that such consent is necessary. Consequently there is no occasion to determine whether the bond was intended to protect private users of the mail from all loss or damage, however consequential, occasioned by the postmaster.

The record shows the only effort made to secure consent of an officer was a request to the Attorney General for

_____

[5] 39 U. S. C. § 34, Postal Laws and Regulations § 410:

"Every postmaster, before entering upon the duties of his office, shall give bond, with good and approved security, and in such penalty as the Postmaster General shall deem sufficient, conditioned for the faithful discharge of all duties and trusts imposed on him either by law or the rules and regulations of the department."

[6] *James Stewart & Co.* v. *Sadrakula, ante,* p. 94.

authority to sue. This was refused. Whether as a matter of right a third party may sue on the instrument for loss covered by an official bond running only to the statutory obligee depends upon the intention of the legislative body which required the bond. This intention may be evidenced by express statutory language or by implication. This was the rule announced in *Corporation of Washington* v. *Young.*[7] There a bond had been given to the Corporation of Washington, a municipality, by the manager of a lottery "truly and impartially· to execute" his duties. Without the city's consent, the holder of a winning ticket sued on the bond. This Court said:

"No person who is not the proprietor of an obligation, can have a legal right to put it in suit, unless such right be given by the Legislature; and no person can be authorized to use the name of another, without his assent given in fact, or by legal intendment."

In *Howard* v. *United States*[8] this comment was made upon the *Young* decision:

"That case undoubtedly is authority for the proposition that, generally speaking, an obligation taken under legislative sanction cannot,· in the absence of a statute so providing, be put in suit in the name of the obligee, the proprietor of the obligation, without his consent."[9] Such· official bonds are often part of a general statutory ·plan for the operation of governmental activities. While all the activities of a government of course confer benefits on its citizens, frequently the benefits are incidental

[7] 10 Wheat. 406, 409.

[8] 184 U. S. 676, 691.

[9] Cf. *United States* v. *United States Lines Co.*, 24 F. Supp. 427; *Moody* v. *Megee*, 31 F. 2d 117; *United States ex rel. Brumberg Bros.* v. *Globe Indemnity Co.*, 26 F. 2d 191, 193; *Idaho Gold Reduction Co.* v. *Croghan*, 6 Idaho 471, 473; 56 P. 164; *United States* v. *Griswold*, 8 Ariz. 453, 456; 76 P. 596.

.and unenforceable.[10]  In the case of an official bond, even if its benefits are not incidental, it may well be that the legislative body is of the opinion that actions on the bond should be limited to the government in order to secure unified administration of claims.

We have recognized a similar need for a single control in regard to a sale bond required by a district court in an equity receivership. This Court in *Munroe* v. *Raphael*[11] had before it an injunction granted by a federal district court upon the motion of its receiver to rescind a consent to sue and forbid further proceedings in a suit in a state court in the name of the United States upon a sale bond of the estate in receivership. The sale bond had been given for assets purchased from the receiver. It ran to the United States only and guaranteed the payment of a certain percentage of indebtedness to all creditors of the estate. The suit had been instituted in the state court by one creditor, with permission of the district court obtained prior to the receiver's motion for injunction. This Court upheld the injunction on the theory that the bond, a part of the estate, remained within the control of the court and that to ensure ratable payments to all creditors one should not be permitted to carry on the litigation. In the opinion, it was declared: "Certainly no creditor could bring a suit in his own name on the bond, for his share of the purchase money. Nor could he institute such an action without leave of the District Court."[12]

Petitioner's attack is pointed at the application of the consent rule rather than at the rule itself. While with

---

[10] *German Alliance Ins. Co.* v. *Home Water Supply Co.,* 226 U. S. 220, 231.

[11] 288 U. S. 485.

[12] *Ibid.* at 488; see *District of Columbia to Use of Langellotti* v. *Fidelity & Deposit Co.,* 50 App. D. C. 309; 271 F. 383.

some other official bonds consent is given by express provision,[13] none is given in the postmaster bond statute. Petitioner urges that consent by implication is given. Attention is called to the words "legal intendment" in the quotation from *Corporation of Washington* v. *Young* and to a comment upon the *Young* case in the *Howard* case that these words show that "consent may, under some circumstances, be assumed to have been given . . ."[14] These expressions are used to base an argument that the statutes and regulations of the postal service establish consent by intendment. The precedent chiefly relied upon for this position is the *Howard* case. This was a suit, without express consent of the United States, on a bond of a clerk of the district court, alleging breach by failure to pay over money deposited with the clerk in settlement of prior litigation. The bond was a statutory bond naming the United States as sole obligee and assuring that the clerk would faithfully discharge the duties of his office. This Court analyzed the statutory requirements and the "peculiar relation" of the clerk to the court to determine the intendment of the Congress as to the standing of the private litigant to sue on clerks' bonds. Consideration was given to the fact that "the great mass of litigation . . . has always been between individuals,"[15] that "the practice of a century" required a ruling that the bond covered them and that it could

[13] 40 U. S. C. § 270a–d (laborers and materialmen may sue on bond of contractor for government building); 22 U. S. C. § 103 ("any person injured" may sue on bond of consul); 22 U. S. C. § 78 (same as to bonds of consular officers acting as administrators in foreign countries); 22 U. S. C. §§ 170, 171 (same as to bonds of marshals of consular courts); 28 U. S. C. §§ 496, 500 (same as to bonds of U. S. marshals); 11 U. S. C. § 78 (h) (same as to bonds of referees, trustees and designated depositories in bankruptcy); 7 U. S. C. §§ 247, 249 (same as to bonds of warehousemen under the Warehouse Act).

[14] 184 U. S. 676, 691.

[15] *Id.*, p. 687.

not be said of the clerk's bond, as it was said of the lottery bond, that it was given primarily for the governmental authority. This Court concluded that even though "generally speaking . . . in the absence of a statute" the obligation cannot be put in suit in the name of the obligee without his consent, the factors of custom, similarity of governmental and private use of the courts and the surrounding circumstances, in the absence of words declaratory of intention, evidenced an intendment to permit suit without consent on the clerk's bond. "In our opinion, Congress intended that the required bond should protect private suitors as well as the United States, and therefore, no statute forbidding it, a private suitor may bring an action thereon for his benefit in the name of the obligee, the United States. Such must be held to be the legal intendment of existing statutory provisions." [16]

We conclude in the present instance, however, that circumstances, practice, statutes and regulations combine to forbid reading into this situation a "legal intendment" to permit suit without the consent of the United States. Assuming the bond declared upon here is intended to cover the users of mail service, its beneficiaries are legion in comparison with the users of a court's depository. Moreover, the United States has a very substantial interest in a postmaster's bond. The statutory duties of a postmaster require him to act as a fiscal officer for the government at his office. He is responsible for postal savings deposits, money orders, stamps, and salary disbursements as well as for the property of the service, buildings, mail bags and other equipment. [17] Such circumstances weigh against a holding that the Congress intended to let a private user of the mails, wronged by the

[16] *Id.*, p. 692.

[17] Postal Laws and Regulations §§ 105–06, 443, 1626, 1408, 1426, 1430 (21), 137, 235, 1866–70.

principal of a postmaster's bond, sue wherever he might find defendants and gain for himself such priority on the bond as vigilance could obtain.[18]

Apparently it is not customary for the United States to consent to suit by mail users upon postmasters' bonds. No case has been called to our attention where such permission has been granted though the requirement for a bond has been in existence since 1825.[19] Rarely has a private individual sought recovery.[20] The contention of petitioner cannot be said to be supported by any continued administrative practice. On the other hand, the United States has undertaken repeatedly and successfully to recover on the bonds for the losses of mail users. Recovery has been allowed on the theory of a suit by a bailee for loss of property in his possession.[21]

---

[18] In the absence of express legislation the government is not entitled to priority. See *United States* v. *State Bank of North Carolina*, 6 Pet. 29, 35; *Mellon* v. *Michigan Trust Co.*, 271 U. S. 236, 239; *United States* v. *Knott*, 298 U. S. 544, 547.

The first statute permitting private suits on public contractors' bonds to the United States made no provision for government priority. 28 Stat. 278. By a later amendment private suits were forbidden until six months after completion of the contract and settlement of the contractors' accounts and the government was given priority. 33 Stat. 811; see *Illinois Surety Co.* v. *Peeler*, 240 U. S. 214, 217. The present statute requires two bonds, one for the government and a second for laborers and materialmen. 40 U. S. C. § 270a–d.

[19] Act of March 3, 1825, 4 Stat. 103.

[20] Cf. *Wile* v. *United States Fidelity & Guaranty Co.*, 6 Alaska 48; *Idaho Gold Reduction Co.* v. *Croghan*, 6 Idaho 471; 56 P. 164.

[21] *National Surety Co.* v. *United States*, 129 F. 70 (C. C. A. 8); *American Surety Co.* v. *United States*, 133 F. 1019 (C. C. A. 5); *United States* v. *American Surety Co.*, 163 F. 228 (C. C. A. 4); *United States* v. *American Surety Co.*, 155 F. 941 (N. D. Ill.); *Gibson* v. *United States*, 208 F. 534 (C. C. A. 1); *United States Fidelity & Guaranty Co.* v. *United States*, 229 F. 397 (C. C. A. 8); *United States Fidelity & Guaranty Co.* v. *United States*, 246 F. 433 (C. C. A. 9); *United States* v. *United States Fidelity & Guaranty Co.*, 247 F. 16 (C. C. A. 6); *United States* v. *Griswold*, 8 Ariz. 453; 76 P. 596.

There are over 44,000 post offices under the Post Office Department [22] and it is common knowledge that millions of items of mail go through them each year. It is rather obvious that numerous claims, many of them for small amounts, are likely to arise in the course of many transactions.[23] Under the Department's Regulations there is a fairly complete administrative formula for handling these claims from discovery to satisfaction.[24] These facts, along with the substantial interest of the government in the bonds, convince us that the Congress intended that claims on the bonds would be handled through the government rather than through various suits by individuals.

*Affirmed.*

[22] Report of the Postmaster General, 1939, p. 126.

[23] Compare the Department's experience with claims on domestic insured mail during the fiscal year ending June 30, 1939. Payments were made in connection with 113,846 claims, and the average payment amounted to only $3.87. Report of the Postmaster General, 1939, p. 120.

[24] Postal Laws and Regulations § 816:

"The loss, rifling, damage, wrong delivery of, or depredation upon registered or other mail, and the failure to collect or remit C. O. D. funds shall be investigated by the Chief Inspector, who shall ascertain the facts.

"2. When the Chief Inspector finds that the facts ascertained in connection with such an investigation establish the responsibility, by reason of fault or negligence, of a postal employee or mail contractor or an agent or employee thereof, the Chief Inspector shall demand the amount of the loss from such employee or contractor.

"6. If full recovery is not made and the Chief Inspector determines that further proceedings should be had, he shall present the facts to the Solicitor for the Post Office Department for advice as to the advisability of suit by the United States for recovery of the amount involved. Upon receipt of the reply of the Solicitor the Chief Inspector shall, if he deem proper, prepare the request of the Postmaster General upon the Solicitor of the Treasury for suit.

"7. All amounts recovered under the provisions of this section shall be paid to the United States and to the senders or owners of the mail as their interests shall appear."