JOE HICKS *et al.*, Plaintiffs-Appellants, *v.* AETNA INSURANCE COMPANY, Defendant-Appellee.

Fifth District    No. 80-151

Opinion filed July 8, 1981.

Edward J. Heller, of DeSoto, for appellants.

Charles R. Jelliffe, of Jelliffe & Ferrell, of Harrisburg, for appellee.

Mr. JUSTICE WELCH delivered the opinion of the court:

This case comes to this court following the dismissal of plaintiffs' complaint against defendant, Aetna Insurance Company. It presents the question of when a third person may maintain an action against an alleged surety on an alleged official bond. We hold that the plaintiffs have not shown that they are entitled to sue Aetna for the acts enumerated in their complaint, and that the trial court properly dismissed the complaint against Aetna.

The plaintiffs, who are grain producers in Illinois, filed a complaint in the Circuit Court of Jackson County in 1979 against various employees of the Illinois Department of Agriculture and against Aetna Insurance Company. All matters alleged in that complaint are accepted as true for purposes of this appeal. Between June 15, 1976, and December 12, 1978, the plaintiffs sold grain on credit to the Murphysboro Grain Elevator in

Murphysboro, Illinois. On or about December 12, 1978, the elevator was closed and declared insolvent, and a petition in bankruptcy was filed on January 12, 1979. According to the complaint, "[t]he assets and liabilities of Murphysboro Grain Elevator are such that plaintiff[s] will recover little, if anything, from the Bankruptcy Court."

It was alleged that the State employees named in the suit acted "negligently," "wantonly and wilfully," and "intentionally" by failing to perform duties required of them by the Illinois grain dealers act (Ill. Rev. Stat. 1979, ch. 111, par. 301 *et seq.*). Specifically, it is stated that these officials allowed the Murphysboro Grain Elevator to operate without obtaining a license, without providing certain financial information, and without procuring a surety bond, as mandated by the Act. The plaintiffs urged that the omissions of the named Department of Agriculture employees proximately caused their losses in the amount of the value of the grain which they deposited with the Murphysboro Grain Elevator.

Aetna, the only defendant involved in this appeal, was described as "the surety on the blanket public official bond" which covered the other defendants during the period in question. Aetna was said to be "liable as surety for the failure of these named defendants to faithfully perform the duties of their offices during that period, as set forth in [Ill. Rev. Stat. 1979], ch. 103, Sections 13 and 14.1 and Ill. Rev. Stat. ch. 122, Section 15. [*Sic.*]"

A motion to dismiss the complaint against it was filed by Aetna. It argued, among other grounds, that the other named defendants were not the agents of Aetna, that the plaintiffs were not in privity of contract with Aetna, that the contract in question was not a performance bond, and that Aetna was not a surety. Essentially, the motion contended for the conclusion, under several different lines of argument, that these plaintiffs could not maintain suit directly against Aetna. This motion was granted, and the plaintiffs have perfected an appeal from that order to this court.

On appeal, plaintiffs argue that the various bonding statutes show that the instrument attached to their complaint was intended as an official performance bond and that Aetna was to serve as a surety on that bond. It is also claimed that a surety's liability on an official performance bond is co-extensive with that of the public official who posts the bond, and that the surety may be sued directly on the bond without first obtaining a judgment against the official. (Ill. Rev. Stat. 1979, ch. 103, par. 13; *People ex rel. Pope County v. Shetler* (1943), 318 Ill. App. 279, 47 N.E.2d 732.) Aetna responds that the policy in question is an indemnity contract, and that there can be no recovery on an indemnity contract if no loss has been suffered by the indemnitee, here, the State of Illinois. (*National Slovak Society ex rel. American Surety Co. v. Matlocha* (1940), 307 Ill. App. 41, 29 N.E.2d 946.) Even if the contract between Aetna and the State of

Illinois is truly a surety bond, we can find no authority which allows these plaintiffs to sue Aetna directly on that bond.

By statute in Illinois, "[e]ach executive and administrative officer whose office is created by this Act, or by any amendments thereto, shall, before entering upon the discharge of the duties of his office, qualify for the office by executing a bond and filing the bond in the office of the Secretary of the State." The bond "shall be conditioned for the faithful performance of the officer's duties." (Ill. Rev. Stat. 1979, ch. 127, par. 15). The Department of Agriculture is covered by this requirement. Ill. Rev. Stat. 1979, ch. 127, par. 40 *et seq.*

To support their ability to sue Aetna directly, the plaintiffs refer us to section 13 of "An Act to revise the law in relation to official bonds" (Ill. Rev. Stat. 1979, ch. 103, par. 13). It provides:

"Whenever the condition of the bond of any public officer shall be violated, suit may be instituted on such bond, and prosecuted to final judgment against such officer, and any or all of the sureties, or against one or more of them, jointly and severally, without first establishing the liability of the principal by obtaining judgment against him alone. The provisions of this section shall extend to the official bonds of executors, administrators, guardians and conservators, and in suits thereon it shall not be necessary to a recovery that a devastavit should have previously been established against the principal."

If, as we have assumed, the relevant contract is a surety bond, then the conditions of this statute govern actions on the contract. *Rosewood Corp. v. Transamerica Insurance Co.* (1974), 57 Ill. 2d 247, 311 N.E.2d 673.

The plaintiffs assert that the plain language of section 13 allows suit to be maintained by them directly against Aetna. However, a closer examination of that provision reveals that "suit may be instituted on such bond," and that no mention is made about who may institute such an action. The plaintiffs argue that "[t]he provisions of Ill. Rev. Stat. ch. 103, par. 13 are not limited to government entities—any beneficiary may sue." They rely principally upon *People ex rel. Pope County v. Shetler* (1943), 318 Ill. App. 279, 47 N.E.2d 732, *People ex rel. First National Bank v. Maryland Casualty Co.* (1940), 306 Ill. App. 1, 28 N.E.2d 131, and *Thomson v. Barker* (1902), 102 Ill. App. 304.

These cited cases do not stand for the proposition that a member of the general public may bring suit against the surety on the bond posted by Department of Agriculture Employees. Neither *Shetler* nor *Maryland Casualty Co.* is relevant, as both actions were instituted by the State, and not by a private citizen. Furthermore, *Maryland Casualty Co.* and *Thomson v. Barker* involved suits on administrators' and executors' bonds, and past and present probate provisions permit private parties to

sue on those bonds in the name of the State (Ill. Rev. Stat. 1939, ch. 3, par. 314; Ill. Rev. Stat. 1979, ch. 110½, par. 12—15). Neither the general laws governing the Department of Agriculture (Ill. Rev. Stat. 1979, ch. 127, par. 40 *et seq.*) nor the grain dealers act (Ill. Rev. Stat. 1979, ch. 111, par. 301 *et seq.*) specifically authorize suit by a private party on the Department of Agriculture's performance bond. In fact, it should be noted that, when a grain dealer is in default to a grain producer, the latter act authorizes the Director of Agriculture, not the producers, to collect on the *dealer's* bond and then distribute the proceeds to the producers. Ill. Rev. Stat. 1979, ch. 111, par. 303.

Our research has uncovered several cases in this State in which recovery has been granted on a public official's performance bond. (*People v. Harper* (1878), 91 Ill. 357; *Governor v. Dodd* (1876), 81 Ill. 162.) But, we have not found any instance in which a private citizen has maintained such a suit. Indeed, the absence of precise statutory authority for such a procedure suggests that it is not permitted.

■■ It is a common law rule of long standing that a third party may not bring an action on an official bond in the absence of specific authority. (63 Am. Jur. 2d *Public Officers and Employees* §463 (1972).) As noted in a leading case,

> " 'The primary object of an official bond is, of course, to protect the interests of the beneficiary named in it,—the State, county, corporation, etc., as the case may be. By statute, however, it is usually provided that bonds given by officers to States and counties shall be available to protect the interests of private persons who may be aggrieved by the breach of such bonds. They cannot be used, however, for these purposes in cases unprovided for by such statutory enactment.' "

*City of Eaton Rapids ex rel. Snyder v. Stump* (1901), 127 Mich. 1, 4, 86 N.W. 438, 439, citing Murfree on Official Bonds §504 (1885).

The United States Supreme Court was faced with a situation which called for interpretation of this rule in *United States ex rel. Midland Loan Finance Co. v. National Surety Corp.* (1939), 309 U.S. 165, 84 L. Ed. 677, 60 S. Ct. 458. There, the petitioner, Midland Loan, was in the business of purchasing installment contracts from automobile dealers. A dealer in Montgomery, Minnesota, sold Midland forged contracts, and sent Midland fictitious credit references along with each contract. Malone, the postmaster of Montgomery, cooperated with the dealer by turning over to him all mail which arrived in Montgomery in Midland's envelopes. The dealer then sent false replies to Midland's credit inquiries, and made installment payments from the cash which Midland paid for the contracts.

Midland brought suit against the surety on the bond executed by Malone to secure the faithful performance of his duties. Federal district

832

and circuit courts granted the dismissal of Midland's complaint. Mr. Justice Reed wrote, on behalf of a unanimous Supreme Court, that [w]hether as a matter of right a third party may sue on the instrument for loss covered by an official bond running only to the statutory obligee depends upon the intention of the legislative body which required the bond. This intention may be evidenced by express statutory language or by implication. (309 U.S. 165, 170, 84 L. Ed. 677, 680, 60 S. Ct. 458, 460.) The court found no evidence, in the statutory language, or in the form of consent given by the United States to sue the surety, that Congress intended private individuals to enforce claims on the bonds by bringing suit directly against the sureties. The dismissal of Midland's complaint was duly affirmed.

■■ The application of these common law principles to this dispute follows naturally. Statutory and case law does not specifically allow this suit, and there are no other indications to the contrary, in the language of the contract, or by any consent from the State of Illinois to sue Aetna directly. In sum, we find no authority to support the plaintiff's suit against Aetna, and we are compelled to affirm the dismissal of their complaint against this particular defendant.

Affirmed.

KASSERMAN, P. J., and JONES, J., concur.