JOE HICKS *et al.*, Plaintiffs-Appellants, *v.* ROBERT J. WILLIAMS, Director of the Department of Agriculture, *et al.*, Defendants-Appellees.

Fifth District    No. 80-554

Opinion filed March 1, 1982.

Edward J. Heller, of Murphysboro, for appellants.

Tyrone C. Fahner, Attorney General, of Chicago (Karen Konieczny, Assistant Attorney General, of counsel), for appellees.

PRESIDING JUSTICE KARNS delivered the opinion of the court:

Plaintiffs, grain producers in Illinois, brought an action in the circuit court of Jackson County against the director, assistant director, officers and employees of the Illinois Department of Agriculture and Aetna Insurance Company for damages allegedly sustained when a grain elevator became insolvent. We affirmed the trial court's dismissal of the action against Aetna Insurance Company. (See *Hicks v. Aetna Insurance Co.* (1981), 97 Ill..App. 3d 828, 423 N.E.2d 584.) The remaining defendants moved to strike the second amended complaint and dismiss the action for, among other things, failure to state a cause of action. Defendant's motion was granted and plaintiffs appeal, contending the following: (1) that as provided by statute (Ill. Rev. Stat. 1977, ch. 111, par. 301 *et seq.*) (hereinafter referred to as the Grain Dealers Act), defendants

owed a duty not only to the State of Illinois, but also to individual grain producers; (2) that the distribution of the dealer's surety bond, as provided in section 3 of the Grain Dealers Act, was not an exclusive remedy; (3) that the complaint alleged malicious breach of duty; and (4) that the doctrine of sovereign immunity did not bar the suit. Because we find that the complaint does not state a cause of action, we do not reach plaintiff's fourth contention.

On December 11, 1979, plaintiffs filed their initial complaint. Defendants filed a motion to dismiss the complaint which was granted, but with leave to amend. In their amended complaint filed on July 11, 1980, plaintiffs stated that from June 15, 1976, to December 12, 1978, they sold grain on credit to Murphysboro Grain Elevator in Murphysboro, Illinois. On or about March 1, 1978, the grain elevator became insolvent and was declared insolvent and closed on December 12, 1978. A petition in bankruptcy was filed on January 12, 1979. The complaint alleged that defendants breached the statutory duty of protecting the grain producers from financial loss as provided in the Grain Dealers Act (Ill. Rev. Stat. 1977, ch. 111, par. 301 *et seq.*), and as a result, plaintiffs suffered damages in the amount of the value of the grain deposited at the grain elevator. Plaintiffs supported their claim to relief by alleging essentially the following acts or omissions: (1) that defendant allowed the grain elevator to operate for a period of time without a license and without posting a surety bond as required by the Act; (2) that defendants, having knowledge that the grain elevator was operating without a license, failed to hold a hearing on the expiration of the license as allegedly required by section 6 of the Act and failed to report the grain elevator's continued operation to the State's Attorney as allegedly required by section 9 of the Act; (3) that defendants failed to detect the insolvency of the grain elevator after a field audit, and (4) that defendants failed to protect the producers' interests after receipt of verbal notice from a producer that Tri-State Grain Company, operating as a subsidiary of the grain elevator, would be one month tardy in making payments for grain purchased. Plaintiffs alleged that they relied on the defendants' performance of their statutory duties and that defendants' breach thereof caused plaintiffs' damages. The complaint characterized defendants' alleged breach of their duties as "negligent," "wanton and willful," "intentional," "derelict," and "with reckless disregard."

Following argument and the submission of memoranda, the trial court ruled that the complaint was insufficient in law because the Grain Dealers Act created no duties owed to individuals other than to the citizens of Illinois as a whole and that plaintiffs failed to plead and could not plead malice or corrupt conduct to state a cause of action at common law.

On appeal, plaintiffs argue that the second amended complaint was sufficient to state a cause of action. Their initial contention in that regard is that the trial court erred in finding that the duties imposed on defendants by the Grain Dealers Act (Ill. Rev. Stat. 1977, ch. 111, par. 301 *et seq.*) were owed to the State of Illinois and not to the individual grain producers. As a corollary to their initial contention, plaintiffs argue that the distribution of the dealers' surety bond as provided in section 3 of the Grain Dealers Act was not intended as an exclusive remedy for the redress of financial loss caused to the grain producers. We have examined the authorities cited by plaintiff and conclude that they are not supportive of the plaintiffs' arguments.

■■ Plaintiffs discuss the legislative history of "An Act to regulate public warehouses * * *" (Ill. Rev. Stat. 1953, ch. 114, par. 189 *et seq.*) (hereinafter referred to as the Public Warehouses Act) in support of the contention that the alleged breach of the defendants' statutory duties constituted a private injury. The Public Warehouses Act was enacted pursuant to article 13 of the 1870 Illinois Constitution and was repealed by the Public Grain Warehouse and Warehouse Receipts Act (Ill. Rev. Stat. 1955, ch. 114, par. 214.1 *et seq.*). We are of the opinion that the history of the repealed Public Warehouses Act is not dispositive of the issue before the court. No provision of the Grain Dealers Act requires a different conclusion. Moreover, the central focus of plaintiffs' discussion of the Public Warehouses Act is the official bond requirement. Even though officials of the Department of Agriculture similarly are required to execute an official bond (Ill. Rev. Stat. 1977, ch. 127, pars. 15, 40 *et seq.*), this requirement does not support plaintiffs' argument. As we noted in *Hicks v. Aetna Insurance Co.* (1981), 97 Ill. App. 3d 828, 423 N.E.2d 584, at common law, a third party could not bring an action on an official bond in the absence of specific authority. We find nothing in the Grain Dealers Act that indicates the legislature's intention to provide a private cause of action by the official bond requirement.

Plaintiffs also cite *Tcherepnin v. Franz* (7th Cir. 1978), 570 F.2d 187. In *Tcherepnin*, the court held the director of the Illinois Department of Financial Institutions liable to the depositors of a savings and loan institution for breach of certain statutory duties imposed on the director by the Illinois Savings and Loan Act (Ill. Rev. Stat. 1963, ch. 32, par. 701 *et seq.*). The court found nothing in the Act to suggest that the statutory duties of the director were owed only to the State of Illinois. The court reasoned that the repeated references to the "protection of the Association" in defining the director's duties indicated that these duties were owed to the depositors.

■■ *Tcherepnin*, however, is distinguishable from the instant case because the Illinois Savings and Loan Act and the Grain Dealers Act are different

in several important respects. Section 6 of the Grain Dealers Act (Ill. Rev. Stat. 1977, ch. 111, par. 306) defines the duties of the department officials. As contrasted with the Illinois Savings and Loan Act, section 6 of the Grain Dealers Act does not contain repeated references to the protection of the grain producers. In addition, the supervisory duties and corresponding powers of the department officials defined in the Grain Dealers Act are more limited than those of the director of the Illinois Department of Financial Institutions. Finally, as contrasted with the Illinois Savings and Loan Act, the Grain Dealers Act contains a provision which suggests that the officials' statutory duties are owed to the State of Illinois and not to private individuals. Section 3 of the Grain Dealers Act requires that the grain dealers post a surety bond made payable to the State of Illinois for the benefit of the grain producers. The statute further provides that when the director determines that a grain dealer has defaulted on payments due the producers, the director shall distribute to the producers the dealer's surety bond. Where a statute creates a new right unknown to the common law, and at the same time gives a remedy for its enforcement, the remedy so prescribed is exclusive. (See *Kosicki v. S. A. Healy Co.* (1942), 380 Ill. 298, 44 N.E.2d 27.) The new right created by the Grain Dealers Act is the grain producers' right to the benefit of the dealer's surety bond; the remedy is distribution of the bond by the director of the Department of Agriculture. The statute suggests that it was the intention of the legislature to relieve any financial loss suffered by the grain producers by the department's distribution of the dealer's surety bond and not by individual prosecution of damage actions against the department officials. Therefore, we find that the Grain Dealers Act imposed upon defendants duties owed to the State of Illinois and not to plaintiffs as individuals.

■■ In addition, we are of the opinion that plaintiffs not only misconstrue the nature of defendants' duties, but also misconstrue what these statutory duties are. The complaint alleged that defendants had a duty to hold a hearing on the expiration of the grain elevator's license pursuant to section 6 of the Act. Section 6 does discuss a hearing requirement but the statutory provisions suggest that the hearing requirement is to protect elevator operators from the loss of their licenses without an opportunity to be heard. The complaint also alleged that section 9 of the Act mandated that defendants report any violations of the Act to the State's Attorney. Section 9 provides that upon receiving notice of a violation, the State's Attorney shall institute proceedings against the violator. It does not mandate that department officials report violations to the State's Attorney. Finally, the complaint alleged that defendants did not take any action to protect the grain producers' interest after receiving verbal notice of Tri-State Grain Company's cash flow problem. Section 6 of the Act,

however, requires that notice to the department be made by verified complaint in writing setting forth the pertinent facts.

As an independent basis for affirming dismissal of this action, we note that the doctrine of public officials' immunity renders defendants immune from suit. The public officials immunity doctrine provides that public officials are not liable for discretionary acts performed within the scope of their authority and not resulting from malicious motives. (*Mora v. State of Illinois* (1977), 68 Ill. 2d 223, 369 N.E.2d 868.) Where the act is ministerial in nature, however, the official will be liable for the negligent performance of that duty.

■■ Plaintiffs argue that defendants negligently performed ministerial duties or, alternatively, that the complaint alleges malicious breach of defendants' discretionary duties. In support of their contentions, plaintiffs rely principally on *Tcherepnin v. Franz* (7th Cir. 1978), 570 F.2d 187. Whether an act is discretionary, or merely ministerial, depends upon a finding that the act was essentially governmental in character. (*Madden v. Kuehn* (1978), 56 Ill. App. 3d 997, 372 N.E.2d 1131.) Plaintiffs allege a breach of defendants' statutory duties relating to the licensing and inspection of a grain elevator. The official acts of licensing and inspecting a business are governmental in character and are unique to the particular public office. The court's reasoning in *Tcherepnin* supports our characterization of these duties as discretionary. That the court in *Tcherepnin* viewed the duty to supervise the savings and loan association as discretionary is apparent from their inquiry into whether the defendant had maliciously breached this duty. Licensing and inspecting are similar to supervising in terms of their essential governmental character.

By way of analogy, we note that section 2—206 of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1977, ch. 85, par. 2—206) recognizes the importance of protecting public employees in the exercise of their judgment as it relates to licensing decisions. It provides the following:

> "A public employee is not liable for an injury caused by his issuance, denial, suspension or revocation of or by his failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval, order or similar authorization where he is authorized by enactment to determine whether or not such authorization should be issued, denied, suspended or revoked."

■■ Finally, plaintiffs argue that the characterization of the defendants' conduct as "derelict" and "with reckless disregard" is sufficient to state a cause of action for malicious breach of defendants' duties. In *Tcherepnin*, the court stated that it was not necessary to use "malicious" or "corrupt" in the complaint where the conduct alleged necessarily entailed the delib-

erate commission of a wrongful act. The defect in the complaint here is different from that raised in *Tcherepnin*. The complaint does not contain specific factual allegations, which if proven, would establish that the named officials acted with malicious intent in failing to protect the grain producers' financial interests. Pleadings which characterize acts and state conclusions rather than stating facts are insufficient. (*Betts v. Department of Revenue* (1979), 78 Ill. App. 3d 102, 396 N.E.2d 1150.) Plaintiffs failed to allege that defendants intentionally breached ministerial duties.

For the foregoing reasons, the judgment of the circuit court of Jackson County is affirmed.

Affirmed.

KASSERMAN and HARRISON, JJ., concur.